IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| DELANEY A. MCCOY<br>       Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | CASE NO. 1:25-cv-988<br><br>DISTRICT JUDGE<br>DAN AARON POLSTER<br><br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Delaney A. McCoy[1] filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying their applications for child's insurance benefits and supplemental security income. Doc. 1; Tr. 10. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

---

[1]     McCoy's preferred pronouns are they, them, and theirs, as reflected throughout this recommendation. Tr. 446.

**Procedural Background**

In October 2022, McCoy filed applications for child's insurance benefits and supplemental security income alleging a disability onset date of November 20, 2023, their date of birth.[2] Tr. 192, 236. McCoy alleged disability due to autism, attention deficit hyperactivity disorder (ADHD), dissociative identity disorder, and seizure disorder. *See* Tr. 228. The Commissioner denied McCoy's application initially and on reconsideration. *See* Tr. 116–24, 127–33.

In October 2023, McCoy requested a hearing. Tr. 142. Administrative Law Judge ("ALJ") Joseph Hijjar held a telephonic hearing in April 2024. Tr. 45. McCoy appeared, testified, and was represented by counsel at the hearing. *Id.* Qualified vocational expert Allison K. Reno also testified. *Id.* In April 2024, the ALJ issued a written decision, which found that McCoy was not entitled to benefits. Tr. 10.

In June 2024, McCoy appealed the ALJ's decision to the Appeals Counsel. Tr. 189. In March 2025, the Appeals Counsel denied McCoy's appeal, Tr. 1, making the ALJ's April 2024 decision the final decision of the Commissioner. Tr. 10–32; *see* 20 C.F.R. § 404.981.

---

[2]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**[3]

*Personal, Vocational, Educational Evidence*

McCoy was born in 2003 making them approximately 21 years old at the time their applications were filed. *See* Tr. 192. They have a high school education and have never worked. *See* Tr. 228–29.

*Medical Evidence*

The ALJ summarized the undisputed record of medical evidence in his decision as follows:

> The claimant's early medical records are largely unremarkable. For example, at a well child visit in July of 2011 (age 7), the claimant was noted to be doing well in 2nd grade, and their physical examination was unremarkable (10F/124-125 (07/27/11)). At a psychiatric evaluation in April of 2012, the claimant was assessed with ADHD (10F/116-121 (04/12/12)). At a follow-up about a month later, the claimant's symptoms had improved with medication, and their mental status examination was unremarkable (10F/113-115 (05/14/12)). By January of 2013, the claimant and their mother reported that the claimant's medication was working "really well" and their focus at school had improved (10F/111 (01/04/13)). In 2014, the claimant reported making straight As, enjoying school, and otherwise doing well (10F/102 (10/31/14)). In 2015, the claimant had some trouble with organization and became distracted when their medication wore off in the afternoons, but their examination was unremarkable, and the record reflects the claimant was not on a Section 504 Plan at that time (10F/96-100 (10/19/15)). The claimant's 2016 follow-up visit was similarly unremarkable (10F/90-94 (11/04/2016)). The claimant did not have

---

[3]    The recitation of medical evidence and testimony is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs.

3

further medical follow-ups until 2020. At a well child visit in September of 2020 (age 16), the claimant and their mother reported that the claimant had no headaches or motor or vocal tics. They also reported participating in organized sports. The claimant's physical examination was unremarkable (1F/16-20 (09/05/20)).

The claimant's remarkable examination findings and reports include the following: in June of 2020, the claimant reported grief following the passing of their father in March of 2020 (10F/86-88 (06/01/20)) and underwent a psychiatric evaluation that month (10F/78-86 (06/11/20)). At a well child visit in September of 2020, the claimant and their mother reported that the claimant was doing well in school; their mood was stable; they had no headaches or motor or vocal tics; they were able to focus and initiate tasks; and they were not hyperactive or impulsive. They also reported participating in organized sports. The claimant's mental status was noted as "attentive." The claimant's ADHD medication regimen was continued (1F/16-20 (09/05/20)). In November, of 2020, the claimant was assessed with MDD (10F/73 (11/17/20)).

I note that in 2018, the claimant was evaluated for a Section 504 Plan at school for ADHD; however, there is no such Plan in the record effective between 2018 and 2020. Rather, the claimant's 11th grade Section 504 Plan is in the record, and it included the following accommodations: receiving a copy of class notes; preferential seating; extended time on assignments; and tutoring. The Plan notes that as an 11th grade student, the claimant was receiving 2 As and 4 Ds in their academic classes, and they had difficulty staying focused (3F/2- 8 (eff. 12/08/20-12/07/21)).

At a psychotherapy intake on December 10, 2020, the claimant reported depression and suicidal ideation following the death of their father. On examination, the claimant was well groomed; they had unremarkable motor activity; their speech was

4

normal; their mood was euthymic and their affect was congruent; they had fair insight, judgment, and impulse control; their memory was intact; and their attention was good (2F/28-30 (12/10/20)). The claimant underwent counseling. The claimant typically was engaged during the sessions; they sometimes had anxiety or depression, but typically, their affect was full range; they had easy rapport; they were coherent; their activity was average; and they had average eye contact (e.g., 2F/26-27 (12/17/20); 2F/10-11 (02/18/21); 2F/8-9 (02/25/21); 2F/6-7 (03/01/21); 2F/3-4 (03/11/21); 2F/1-2 (03/18/21); 5F/25-26 (06/17/21); 5F/16-17 (07/15/21). The claimant also described their alters to their counselor (e.g., 5F/15, 17-22 (07/01/21 through 07/29/21) (Liz and Thyme); 5F/12 (08/05/21) (Arus)); 5F/9-10 (08/19/21) (Mellie and Cher); 5F/6 (08/26/21) (Arum)). During these examinations, the claimant was well groomed; their motor activity was unremarkable; their behavior was drastic; their speech was normal; their mood was euthymic with a congruent affect; their insight and judgment were fair; their memory was intact; their attention was good; and their thought content was preoccupied (e.g., 5F/8 (08/19/21); 5F/11 (08/05/21); 5F/15 (07/29/21)).

The claimant had an epilepsy consultation in February of 2021 following a reported grand mal seizure on February 19th and episodes of "zoning out" happening three to four times per week since the start of high school. They also reported declining grades at school. Based on the claimant's and their mother's reports, the claimant initially was assessed with three possible seizure types (aura (general tonic clonic), dialeptic, and psychic), and they were referred for an EEG and MRI (4F/63-68; 10F/65-69 (02/22/21)). However, the claimant's EEG was normal (4F/59-61 (03/01/21)). Several months later, the claimant reported having seizure-like activity including inability to move (while still coherent) and muscle spasms. The claimant's general examination was unremarkable, including a normal gait, full muscle strength bilaterally, and normal deep tendon

5

reflexes bilaterally. The claimant was admitted for observation; imaging of the claimant's brain was unremarkable (10F/152-154 (04/15/21)), as was an EEG during that time (4F/48). However, video monitoring during the EEG captured 1 staring event and 5 right leg and left face jerking episodes, even though the EEG did not show changes to suggest they were epileptic seizures in origin. The claimant was assessed with psychogenic non-epileptic seizures (PNES) (4F/6-53; 10F/36-54 (04/15/21-04/17/21)). At a follow-up, the claimant reported that the episodes lessened to 1-2 per day (down from 10 per day) (4F/1-5 (07/19/21)). At a well child visit in April of 2022, the claimant's physical examination was unremarkable (9F/10-15 (04/02/22)).

In June of 2021, at a follow-up with the claimant's psychiatric provider, the claimant and their mother noted the possibility of repeating 11th grade. The claimant's alter "Nova" was present during the examination, which was unremarkable (10F/28-34 (06/01/21)). In September of 2021, the claimant was doing better overall in that their PNES seizures persisted but were less frequent; their therapy was effective; the claimant's ADHD medication could help with afternoon seizures; and the claimant was doing well in the first week of school. The claimant's mental status exam was unremarkable (10F/16-23 (09/03/21)). Their exam in October of 2021 was substantially similar (10F/9-15 (10/29/21)). Also in October of 2021, the claimant's Section 504 Plan was reviewed. It noted decreased concerns with the claimant's ability to complete assignments, but some concerns with attention and concentration. The Plan included the same accommodations as in their prior 504 Plan. It also noted that the claimant was receiving 4 As, 1 D, and 1 F in their classes (7F/8-23 and 8F/4-17 (eff. 10/20/21-06/03/22)). At a consultative psychological examination in October of 2021, the claimant was pleasant and cooperative; they were well groomed; they were soft spoken, but their speech was otherwise unremarkable; their affect was full range and appropriate; their mood was dysthymic, but not tearful; they were alert and

6

fully oriented; their attention and concentration were intact; their recent and remote memory was intact; and their insight and judgment were age appropriate. The examiner assessed the claimant with ADHD and MDD (6F/4-5).

At a well child visit in April of 2022, the claimant reported poor academic performance and a normal mood; on examination, the claimant was attentive, and the balance of their examination was unremarkable (9F/10-15 (04/02/22)). The claimant underwent additional counseling in 2022 to address their mental health with additional alters (11F/1-26 and 17F/1-5, 11-13, 19-20, 22-23, 25-26, 28, 30, 33, 39, 43, 64-70 (06/17/22 through 12/29/22) (including Danny, Firefly, Nina, Joey, Ginger, Sunny, Atlas)), but there were no examination findings noted. The claimant's counseling records for the period January of 2023 through March of 2024 are similar (see 17F/6- 10, 14-18, 21, 24, 27, 29, 31-32, 34-38, 40-42, 44-60 (01/06/23 through 03/15/24) (adding Sock and Valla)).

At a consultative psychological evaluation in April of 2023, the claimant was well groomed; they were friendly and cooperative; they acknowledged feeling stressed, but had good rapport; they made excellent eye contact; their speech was unremarkable; their affect was broad and their mood was unremarkable and stable; they reported having some anxiety and a history of panic attacks, but none currently; they were alert and fully oriented; their cognitive functioning was unremarkable; their intellectual functioning was average; and their insight and judgment were fair (14F/3-4). The claimant also underwent a psychiatric diagnostic evaluation in September of 2023. On examination, the claimant was anxious; their affect was full and appropriate; they were well groomed; they were fully oriented; their speech was unremarkable; their memory was intact; their attention span was intact and they were focused; their judgment was unimpaired; and their insight was good. The claimant's mental health nurse practitioner adjusted the claimant's

7

medications (15F/6-12, 30-36 (09/21/23)). At a follow-up visit about a month later, the claimant reported improvement with the new medication regimen, including lessening depression and anxiety, and their examination was unremarkable (15F/13-17, 37-41 (10/13/23)). In November, the claimant reported doing "really well," and their examination was again unremarkable (15F/18-22, 42-46 (11/17/23)). The claimant's January 2024 follow-up was substantially similar. (15F/23-28, 47-52 (01/05/24)).

Tr. 23–26.

*Opinion Evidence*

The ALJ described his evaluation of the relevant[4] medical opinion evidence as follows:

> I am not persuaded by the opinion of consultative psychological examiner Deborah Koricke, Ph.D., dated October 22, 2021 (6F), who opined that the claimant had no verbal skills; they had difficulty acquiring and using information; they had difficulty focusing and completing tasks; and they had no problems with self-care, but could not be left alone due to their seizure disorder (6F/6). I am not persuaded by this opinion because it is not entirely supported by Dr. Koricke's examination of the claimant: the claimant was pleasant and cooperative; they were well groomed; they were soft spoken, but their speech was otherwise unremarkable; their affect was full range and appropriate; their mood was dysthymic, but not tearful; they were alert and fully oriented; their attention and concentration were intact; their recent and remote memory was intact; and their insight and judgment were age appropriate (6F/4-5). Dr. Koricke's opinion also is based on the childhood domains of functioning rather than an adult assessment of the claimant's work-related

---

[4]    In the interest of brevity, I have included only the ALJ's discussion of the opinion evidence that McCoy challenges in their briefing.

8

limitations. Moreover, the opinion is not consistent with the other evidence of record which suggests that the claimant has limitations interacting with others and some mild limitations in other areas of functioning, as explained in detail in the *Paragraph B Criteria Analysis* above. Accordingly, I find this opinion unpersuasive.

I find partially persuasive the opinion of consultative psychological examiner Charles Misja, Ph.D., dated April 26, 2023 (14F), who opined that the claimant has no limitations in understanding, remembering, or applying information; minimal to intermediate limitations in concentrating, persisting, or maintaining pace and responding appropriately to supervision and to coworkers; and their mental health is exacerbated by stress which could impact the claimant's ability to respond appropriately to work pressures in a work setting. I find this opinion partially persuasive because it generally is supported by Dr. Misja's examination of the claimant: the claimant was well groomed; they were friendly and cooperative; they acknowledged feeling stressed, but had good rapport; they made excellent eye contact; their speech was unremarkable; their affect was broad and their mood was unremarkable and stable; they reported having some anxiety and a history of panic attacks, but none currently; they were alert and fully oriented; their cognitive functioning was unremarkable; their intellectual functioning was average; and their insight and judgment were fair (14F/3-4). However, Dr. Misja's opinion that the claimant could have up to "intermediate" difficulty maintaining attention and concentration is not supported by his examination, where the claimant's attention and concentration were unremarkable even though the claimant's ADHD was then unmedicated. Additionally, Dr. Misja's opinion that the claimant would have difficulty responding appropriately to work pressures is based only on the claimant's and their mother's reports rather than the examination, where the claimant acknowledged feeling stressed, but was able to complete tasks

appropriately. Moreover, the more complete record supports that the claimant's ability to concentrate, persist, or maintain pace is only mildly limited insofar as the claimant's ADHD is well controlled with medication (whereas the claimant was not medicated during Dr. Misja's examination; see 14F/2). That said, Dr. Misja's opinions regarding the claimant's abilities to understand, remember, or apply information, and to interact with others are generally consistent with the other evidence of record noted in the *Paragraph B Criteria Analysis*. Accordingly, I find this opinion partially persuasive.

I am not persuaded by the opinion of the claimant's counselor, Nadine Constantini, LISW, dated September 13, 2021, opining that the claimant was not capable of functioning appropriately at home, school, or at work due to their physical and mental health (5F/1-2). I am not persuaded by this opinion, in part, because counselor Constantini is not an acceptable medical source under our regulations (see 20 CFR 404.1502(a) and 416.902(a)). Additionally, the opinion is inherently neither valuable nor persuasive because it is on an issue reserved to the Commissioner (i.e., whether the claimant is able to work) (see 20 CFR 404.1520b(c) and 416.920b(c)). Moreover, to the extent that the opinion could be construed to opine that the claimant has extreme physical or mental functional limitations, it is not supported by Counselor Constantini's own examinations of the claimant: the claimant typically was engaged during the sessions; they sometimes had anxiety or depression, but typically, their affect was full range; they had easy rapport; they were coherent; their activity was average; and they had average eye contact (e.g., 2F/1-4, 6-11, 26-27; 5F/16-17, 25-26). During these examinations, whether presenting as the claimant or an alter, they were well groomed; their motor activity was unremarkable; their behavior was drastic; their speech was normal; their mood was euthymic with a congruent affect; their insight and judgment were fair; their memory was intact; their attention was good; and their thought content was preoccupied

10

(e.g., 5F/8, 11, 15). Counselor Constantini's opinion also is not consistent with the other evidence of record; for example, at recent visits, the claimant reported improvement with medication and doing "really well," and their examinations are unremarkable (e.g., 15F/13-28, 37-52). Therefore, I am not persuaded by this opinion.

Tr. 29–30.

### The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. Born on November 20, 2003, the claimant had not attained age 22 as of November 20, 2003, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since November 20, 2003, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant's severe impairments are best described as follows: psychogenic non-epileptic seizure disorder; neurocognitive disorder; personality discover; major depressive disorder (MDD); and attention-deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: they can never climb ladders, ropes, or scaffolds; they must avoid all exposure to unprotected heights, dangerous moving

11

machinery, and commercial driving; and they can adapt to occasional and superficial interactions with the public (where superficial means no arbitration, mediation, negotiation, or being responsible for the safety of others).

6. The claimant has no pas relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 20, 2002, and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at lease a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 410.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2003, through the date of the decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. 12–32.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step, sequential analysis to make a disability determination:

1.   Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.   Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.   Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.   What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.   Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* Social Security Ruling 11-2p, 2011 WL 4055665, at *3 (Sept. 12, 2011) (setting out the same five-step analysis for cases involving "young adults"). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden

13

shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### Standard of Review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 103 (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. The ALJ complied with Social Security Ruling 11-2p.*

McCoy first asserts that the ALJ failed to evaluate their education records consistent with Social Security Ruling 11-2p. Doc. 8, at 9.

Ruling 11-2p, offers guidance on how an ALJ should consider and evaluate certain evidence regarding disability in young adults. *See* SSR 11-2p, 2011 WL 4055665 (Sept. 12, 2011). Young adults are defined as "people between the ages of 19 to approximately 25." *Id*. at *2. The Ruling further provides that a claimant's educational records "may indicate how well a young adult can use his or her physical and mental abilities to perform work activities." *Id*. at *14. In considering a claimant's educational records, the ALJ is instructed to consider a variety of sources, including: (1) medical sources; (2) school programs, including special education and individualized education plans ("IEP"); (3) psychosocial supports and highly structured or supportive

15

settings; and (4) extra help and accommodations. *Id.* at 9–20. While Social Security Rulings do not have the force of law, they are binding on ALJs. *See Heckler v. Edwards*, 465 U.S. 870, 873 n.1 (1984) (citing 20 C.F.R., Part 422).

McCoy asserts that the ALJ "improper[ly] reject[ed]" the educational evidence of record. Doc. 8, at 11. McCoy, however, omits a key step in their analysis. In particular, they claim that "the ALJ's stated reasons for dismissing [educational] evidence runs contrary to the requirements provided in SSR 11-2p." Doc. 8, at 8. But McCoy does explain how or why the ALJ's "stated reasons" were inconsistent with Ruling 11-2p. Instead, they assert that "[c]ourts in other circuits have found error when the ALJ failed to consider educational records as required by SSR 11-2p." *Id.* at 8. Perhaps so, but McCoy doesn't claim that the ALJ failed to consider anything. *See id.* From there, McCoy simply cites evidence without explaining whether the ALJ considered it, before asserting that the ALJ's RFC "contains no mental limitations pertaining to concentration, persistence, or pace and her ability to stay on task in a work environment." *Id.* at 9.

This manner of presentation doesn't establish anything, let alone that the ALJ either failed to consider—or did not weigh as strongly as McCoy would have hoped—evidence. Indeed, McCoy recognizes that the ALJ discussed McCoy's teacher's statement and their 504 plans.[5] *See* Doc. 8, at 10. Notably,

---

[5]   A 504 Plan is an educational accommodation plan developed in accordance with Section 504 of the Rehabilitation Act of 1973. The plan is created to provide disabled students with equal access to education.

16

McCoy never cites the portion of Ruling 11-2p that the ALJ allegedly contravened. And, as the Commissioner notes, Ruling 11-2p only requires that the ALJ "consider relevant school records" not adopt any specific limitations suggested by those records. *See* Doc. 10, at 8 (citing *Anthony L. v. Comm'r of Soc. Sec.*, No. 1:22-CV-605, 2023 WL 5349509, at *4 (S.D. Ohio Aug. 21, 2023)).

Considering that there is no requirement that the ALJ discuss some specific, unidentified aspect of McCoy's educational records, it is clear that McCoy's argument amounts to a dispute over the ALJ's weighing of the evidence. But the ALJ is solely responsible for weighing the evidence. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020)) ("this court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."). And, absent evidence to the contrary, the ALJ's statement that he considered the entire record, *see* Tr. 21, is presumed true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *cf. Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988) (noting that the Appeals Council "state[d] that it 'considered the entire record which was before the administrative law judge, including the testimony at the hearing'").

The ALJ cited ample evidence to support his RFC finding, dedicating over five pages to analyzing McCoy's allegations and the opinion evidence of record. *See* Tr. 26–31. And, when rejecting as unpersuasive McCoy's educational records, the ALJ explained that although those "records reflect some of the claimant's grades and the accommodations they received at school," the "accommodations do not support that the claimant experiences functional limitations in any areas of mental functioning with respect to performing work-related activities." Tr. 30. It is plain, both from the ALJ's decision and McCoy's own briefing, that the ALJ "considered" McCoy's educational record. *See* Doc. 8, at 8; Tr. 30. And, to the extent that McCoy is arguing that the ALJ's finding that the educational records were unpersuasive was alone reversible error, McCoy has not cited anything to support that argument. *See* Doc. 8, at 8–9 (citing cases that simply support an ALJ's obligation to evaluate the educational records).

Moreover, McCoy's bare citation to record evidence does not provide a basis for remand because it is possible for there to be substantial evidence in the record that supports disparate conclusions. *Jones*, 336 F.3d at 477 ("we must defer to an agency's decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.'"). None of McCoy's arguments show that the ALJ's decision is unsupported by substantial evidence. And any argument to that effect would fail because the ALJ's RFC

18

determination was explicitly adopted from the state agency consultant's opinions, which themselves provide substantial evidence. *See Kurman v. Kijakazi*, No. 1:20-cv-1837, 2022 WL 1067568, at *7 (N.D. Ohio Jan. 13, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision") (collecting cases), *report and recommendation adopted*, 2022 WL 765072 (N.D. Ohio Mar. 14, 2022).

For all the reasons stated, McCoy's first issue does not provide a basis for remand.

> ### 2. The ALJ adequately explained his consideration of the medical opinion evidence and relied on substantial evidence in determining McCoy's RFC.

McCoy next challenges the ALJ's consideration of the medical opinion evidence. *See* Doc. 8, at 9. On review, however, it is apparent that McCoy is actually advocating their belief that the ALJ should have placed more weight on, and found persuasive, three medical opinions that support McCoy's desired outcome.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source

19

are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

McCoy first collectively argues that "the ALJ performed an improper consistency factor evaluation of Dr. Koricke, Dr. Misja, and Ms. Constantini[.]" Doc. 8, at 10. To this end, they argue that (1) "the ALJ failed to compare [McCoy's] educational records with these opinions when evaluating consistency," and (2) "failed to compare these medical opinions to each other when finding them not persuasive." *Id.* Both of these arguments are flawed.

For starters, McCoy does not identify any legal authority requiring an ALJ to articulate a comparison of an opinion to a particular piece of evidence

20

or other opinion in the record. Indeed, as the Commissioner notes, nothing "obligat[es]" an ALJ "to determine how" different medical "opinions compare to each other." *Chaney v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-1291, 2023 WL 5509429, at *11 n.2 (N.D. Ohio Aug. 25, 2023); *see* Doc. 10, at 11 (citing *Chaney* and *Stanley v. Comm'r of Soc. Sec. Admin.*, No. 1:18-cv-1733, 2019 WL 4480183, at *9 (N.D. Ohio Sept. 18, 2019) (noting that "the Sixth Circuit has held that the regulations 'do[] not instruct an ALJ to compare the consistency of treating and examining physicians opinions to each other', instead, an ALJ is instructed 'to compare the consistency of a physician's opinion to the record as a whole'")); *cf. Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *6 (6th Cir. June 12, 2024) ("Sallaz identifies no authority limiting ALJs to relying on a rebuttal medical opinion when [evaluating the persuasiveness of opinion evidence]"). But, even if there were such an obligation, McCoy does not point to anything that would support the idea that a failure to do so amounts to reversable error.

Additionally, McCoy's argument appears to be equal parts a challenge to the ALJ's consideration of medical opinion evidence and a rehashing of their earlier argument that the ALJ improperly rejected as unpersuasive their educational records. *See* Doc. 8, at 11 (conflating arguments regarding the two required factors for consideration under applicable regulations and the ALJ's evidence of "functioning during school hours" to argue that greater limitations should have been found). But McCoy's argument heading indicates only a

challenge to the ALJ's consideration of the supportability and consistency factors, so any superfluous arguments are deemed forfeited. *See* Doc. 5, at 3 ("Each introductory heading in the Argument or Analysis section of a brief must correspond to the argument presented under the heading. Failure to comply with this requirement may result in (a) waiver of the arguments in the heading and in the text following the heading; (b) striking of the offending brief; and (c) other appropriate sanctions. Similarly, bald assertions of error— those unsupported by explanation and argument—will be deemed waived.").

This leaves McCoy's argument that the ALJ failed to consider the required consistency factor, which fails for at least two reasons. First, McCoy does not cite the ALJ's discussion of the three opinions at issue. *See* Doc. 8, at 10–11. Second, the face of the ALJ's decision shows that he *did* explain how he considered the consistency factor when he discussed the opinions at issue. *See* Tr. 29–30. For example, the ALJ explained that Dr. Koricke's opinion was not persuasive because it "is not consistent with the other evidence of record which suggests that the claimant has limitations interacting with others and some mild limitations in other areas of functioning, as explained in detail in the *Paragraph B Criteria Analysis* above." Tr. 29. And, as to social worker Constantini's opinion, the ALJ explained that his opinion was unpersuasive and "not consistent with the other evidence or record; for example, at recent visits, the claimant reported improvement with medication and doing 'really well,' and their examinations are unremarkable[.]" Tr. 30. Lastly, the ALJ

22

explained that Dr. Misja's opinion was partially persuasive because, although the complete record was inconsistent with some of Dr. Misja's findings, the "opinions regarding [McCoy's] abilities to understand, remember, or apply information, and to interact with others are generally consistent with the other evidence of record noted in the *Paragraph B Criteria Analysis*." Tr. 29–30. The face of the ALJ's opinion thus belies McCoy's argument that the ALJ failed to consider the consistency of these three opinions.

Second, McCoy contradictorily argues that (1) the ALJ erred when he "failed to perform a proper supportability analysis of Dr. Koricke's opinion," Doc. 8, at 13, and, in the very next sentence, (2) "[t]he ALJ states that Dr. Koricke's opinion is not supported by her examination," *id*. McCoy then cites portions of Dr. Koricke's opinion to assert that the ALJ failed to explain how those portions did not support Dr. Koricke's opinion. *Id*. at 13–14. In so arguing, McCoy ignores that the ALJ's decision complied with the regulation. *See* 20 C.F.R. § 416.920c(b)(2). Specifically, the regulation merely requires that the ALJ explain how he considered the supportability factor, which the ALJ did when he stated:

> I am not persuaded by this opinion because it is *not entirely supported* by Dr. Koricke's examination of the claimant: the claimant was pleasant and cooperative; they were well groomed; they were soft spoken, but their speech was otherwise unremarkable; they were alert and fully oriented; their attention and concentration were intact; their recent and remote memory was intact; and their insight and judgment were age appropriate (6F/4-5).

23

Tr. 29 (emphasis added). Notably, the evidence that McCoy cites in support of their argument, Doc. 8, at 14–15, was considered by the ALJ because it is contained within the record document, 6F, that the ALJ cited. *See* Tr. 472–78 (Exhibit No. 6F).

Moreover, McCoy's citation to specific portions of Dr. Koricke's opinion neither shows that the ALJ failed to consider that evidence, *see Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)), nor that the ALJ's decision was unsupported by substantial evidence, *see Jones*, 336 F.3d at 477. Instead, McCoy's citation to other evidence illustrates not that the ALJ failed to comply with the requirement that he consider the supportability and consistency, but that McCoy disagrees with the ALJ's findings and believes that he should have reached a different conclusion. This difference of opinion does not support remand.

Based on the reasons stated, McCoy's second issue does not provide a basis for remand.

> 3. *The ALJ's RFC formulation, which accounted for McCoy's seizures, is supported by substantial evidence.*

McCoy lastly challenges the ALJ's alleged failure to account in the RFC for McCoy's stress induced seizures. Doc. 7, at 13.

24

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The heart of McCoy's third issue is that they believe the ALJ failed to properly account for the severe impairment of psychogenic non-epileptic seizure disorder in the RFC. Doc. 8, at 15. To this end, McCoy alleges that the ALJ failed to explain why there was "no work-related stress limitation" in their RFC to account for their stress-triggered seizures. *Id*. McCoy does not, however, propose what sort of limitation should have been included to account

25

for this limitation. They also do not claim that the ALJ failed to consider any of the factors listed in Ruling 16-3p. *See* Doc. 8, at 15 (simply pointing out that SSR 16-3p requires an ALJ to consider certain factors when evaluating an individual symptoms). But even if McCoy had attempted to argue that the ALJ didn't discuss one or more factors, the ALJ is not obligated to discuss the factors in his decision—Ruling 16-3p simply requires that the ALJ consider the factors, which the ALJ repeatedly said he did.  *See e.g.*, Tr. 13, 14, 21. And McCoy has not made shown anything that would contradict the ALJ's statement. So it is presumed true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th at 163.

Moreover, the ALJ also adopted the same limitations that the state agency consultant's opined, which McCoy does not argue was an error. The fact that the ALJ adopted the persuasive findings of the state agency consultants provides substantial evidence to support the RFC findings. *See Kurman*, 2022 WL 1067568, at *7. So to the extent that McCoy argues that "the RFC is not supported by substantial evidence," Doc. 8, at 15, that argument fails.

The ALJ's RFC determination is supported by substantial evidence because it aligns with the findings of the state agency reviewers, as the ALJ explained. *See* Tr. 28–19 (stating that "the residual functional capacity finding is supported by, and consistent with, the evidence of record, including the medical evidence, examination findings, *the persuasive portions of the medical opinions of record*, and the claimant's allegations consistent with the medical

evidence" and finding that that the state agency medical consultants and state agency psychological consultants' opinions were persuasive) (emphasis added).

McCoy's third issue, thus, does not support remand.

**Conclusion**

For all of the reasons stated, I recommend that the Court affirm the Commissioner's decision.

Dated: January 23, 2025

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).